NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0912n.06
Filed: November 18, 2005

# United States Court of Appeals

## FOR THE SIXTH CIRCUIT

_____

No. 04-3505

_____

| | | |
|---|---|---|
| Keith Belluardo; David M. Middleton, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Ohio. |
| Cox Enterprises, Inc., Pension Plan, | * | |
| et al., | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: April 29, 2005

Filed:

_____

Before SUHRHEINRICH, BATCHELDER, and JOHN R. GIBSON,[1] Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

_____

[1]The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

Keith Belluardo and David Middleton appeal from the district court's[2] entry of judgment against them on their ERISA benefits claim and its dismissal of their breach of fiduciary duty and unjust enrichment claims against Cox Enterprises, Inc. and related entities.[3] On appeal, Belluardo and Middleton contend that they are participants in Cox Enterprises' pension plan and are entitled to benefits under the plan. They also contend that the plan administrator breached a fiduciary obligation by failing to classify them as employees of Dayton Newspapers, Inc., a subsidiary of Cox Enterprises. Finally, they claim they are entitled to amounts that Dayton Newspapers should have paid the federal and state governments on their behalf as Social Security and Medicare taxes, unemployment insurance, and workers' compensation contributions. We affirm.

Belluardo and Middleton were newspaper carriers for Dayton Newspapers, Inc. during the 1990s. Belluardo delivered to residential customers, and Middleton delivered to retailers and newspaper boxes. Both signed agreements with Dayton Newspapers characterizing themselves as independent contractors. In 1998, after each had ceased delivering for Dayton Newspapers, they filed a putative class action in Ohio state court, alleging, inter alia, that Dayton Newspapers had misclassified them as independent contractors when they were actually common law employees. The state trial court entered summary judgment for Dayton Newspapers, Inc. McElwee v. Dayton Newspapers, Inc., No. 98-CV-3686 (Ohio Ct. Common Pleas Feb. 13, 2003). The court stated, "Plaintiffs essentially claim that [Dayton Newspapers], through both a written contract and oral statements, fraudulently misrepresented that the relationship between the parties would be one of an independent contractor," but

----

[2]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio.

[3]The defendants are Dayton Newspapers, Inc., Springfield Newspapers, Inc., Cox Ohio Publishing, Inc., and Cox Enterprises, Inc., as well as Cox Enterprises, Inc. Pension Plan and its Administrative and Management Committees.

the court rejected the claim, holding that the plaintiffs were independent contractors because they had the right to control the means of selling the papers. Slip op. at 6-7. The Ohio Court of Appeals affirmed, observing that although it agreed that plaintiffs were independent contractors, the real issue before it was whether the plaintiffs were permitted to buy and sell the newspapers, even though Dayton Newspapers set the purchase and resale prices; the court concluded the plaintiffs did buy and sell the papers, and so there was no misrepresentation by Dayton Newspapers, Inc. McElwee v. Dayton Newspapers, Inc., No. 19813, 2004 WL 67965 (Ohio Ct. App. Jan. 16, 2004). Belluardo and Middleton did not seek review in the Ohio Supreme Court.

While their state suit was pending, on Dec. 12, 2000, Belluardo and Middleton filed a claim with the plan administrator for Cox Enterprises, Inc. Pension Plan contending that they were covered employees entitled to benefits under the pension plan. Cox Enterprises is named as the plan administrator, but an administrative committee performs the day-to-day administrative duties. The pension plan's terms include as covered employees "any Employee of the Company[4] except any Employee . . . (c) who is classified as a commissioned newspaper carrier under the Company's personnel policy."

Before receiving any response from the plan's administrative committee, Belluardo and Middleton filed this suit in federal court on January 29, 2001, seeking benefits under the plan and relief from a breach of fiduciary duty and asserting a state law claim for unjust enrichment. The suit was framed as a class action.

On June 12, 2001, Cox Enterprises' Director of Corporate Benefits, Betsy Vencius, wrote Belluardo and Middleton, denying their claim for benefits. Belluardo and Middleton appealed to the plan administrative committee. On December 12,

---

[4]The appendix does not contain a complete version of the plan, but we assume "the Company" refers to Dayton Newspapers, since that is the entity for whom Belluardo and Middleton worked.

2001, the administrative committee denied Belluardo and Middleton's claim, citing four bases for its decision. For purposes of economy, we will focus only on the first basis, the fact that the plan excluded employees who are "classified as a commissioned newspaper carrier under the Company's personnel policy." The committee stated that Belluardo and Middleton came within the plain meaning of "newspaper carriers" and that they worked on commission. The committee reasoned that even though Dayton Newspapers could not point to any written personnel policy that classified the plaintiffs as "commissioned newspaper carriers," the newspaper's practice had been to treat carriers as ineligible for benefits. The committee also relied on the independent contractor agreements signed by the plaintiffs as further evidence that the newspaper had a policy against treating carriers as employees. Finally, the committee cited Internal Revenue Code § 3508, under which direct sellers shall not be treated as employees under the Internal Revenue Code; the committee reasoned that if the newspaper had included the carriers as covered by the plan, the plan's qualification under Internal Revenue Code § 401(a) would be endangered by providing benefits to persons who were not employees or employees' dependents.

Even though the ERISA benefits claim must be decided on the administrative record as it existed at the time of the plan's final decision, Moon v. UNUM Provident Corp., 405 F.3d 373, 378-79 (6th Cir. 2005), Belluardo and Middleton moved the court to allow limited discovery, namely discovery of communications between the plan administrator and its legal counsel. The district court denied the motion, holding that once a plan participant has filed suit against the plan, the attorney-client privilege protects further communications between the plan administrator and its legal counsel. Belluardo v. Cox Enters. Pension Plan, No. C-3-01-041 (S.D. Ohio Nov. 10, 2003).

The parties cross-filed for judgment on the administrative record on the claim for benefits, and the defendants moved for dismissal of the claims for breach of fiduciary duty and for unjust enrichment. The district court first determined that it must apply the highly deferential "arbitrary and capricious" standard of review to the

administrative committee's decision that the carriers were not covered under the plan. Belluardo v. Cox Enters. Pension Plan, No. C-3-01-041, slip op. at 4-6 (S.D. Ohio March 29, 2004). The district court then determined that it was not arbitrary and capricious for the administrative committee to find that Middleton and Belluardo were excluded from coverage by the terms of the plan because they were commissioned newspaper carriers under the Dayton Newspapers' personnel policy. Id. at 6. The district court dismissed Count II, for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3), because it is not possible for the plaintiffs to bring both a claim for benefits under 29 U.S.C. § 1132(a)(1)(B) and a claim for breach of fiduciary duty for the same injury. Slip op. at 8. Finally, the district court dismissed the unjust enrichment claim seeking to enjoin Dayton Newspapers to pay to the federal government the employer's portion of Social Security and Medicare taxes for plaintiffs; the court reasoned that there is no private right of action for such relief under the Social Security Act. Slip op. at 9.

## I.

### A.

We review de novo the decision of a district court in an ERISA benefits case. Spangler v. Lockheed Martin Energy Sys., Inc., 313 F.3d 356, 361 (6th Cir. 2002); Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 617-20 (6th Cir. 1998) (Gilman, J., concurring, joined by Ryan, J.). A plan administrator's denial of benefits is reviewed de novo unless the plan vests the administrator with complete discretion in making eligibility determinations. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Moon v. UNUM Provident Corp., 405 F.3d 373, 378 (6th Cir. 2005). If the administrator is given such discretion, its determinations must be upheld unless they are arbitrary or capricious. Moon, 405 F.3d at 378. "A decision regarding eligibility for benefits is not arbitrary and capricious if the decision is 'rational in light

of the plan's provisions.'" Spangler, 313 F.3d at 361 (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988)).

Belluardo and Middleton contend that the plan does not vest discretion in the plan administrator. Section 12.2 of the plan instrument creates an administrative committee and confers on the committee a number of powers, including:

> (2) to interpret the Plan, such interpretation in good faith to be final and conclusive; [and]
> (3) to decide all administrative questions concerning the operation of the Plan and the eligibility of any Employee to participate in the Plan . . . .

Section 12.5(j) of the plan instrument provides: "Any determination made by a Committee in accordance with its duties and responsibilities shall be conclusive and binding on all Participants, Beneficiaries, Employees and all other persons interested in the Plan or asserting claims of the Plan." Plan language giving the administrators the power to interpret the plan and make administrative decisions thereunder and making the administrators' decision on such matters conclusive has been held to warrant use of the arbitrary-and-capricious standard. See Borda v. Hardy, Lewis, Pollard & Page, P.C., 138 F.3d 1062, 1066-68 (6th Cir. 1998) (discretion found where plan stated administrator had power to make determinations in connection with administration, interpretation and application of plan and such determinations were "conclusive and binding"); Bartling v. Fruehauf Corp., 29 F.3d 1062, 1071 (6th Cir. 1994) (discretion found where plan stated administrator's decisions with respect to administration and interpretation were "binding and conclusive"). A plan instrument does not have to use the word "discretion" in order to grant discretion. Admin. Comm. of the Sea Ray Employees' Stock Ownership & Profit Sharing Plan v. Robinson, 164 F.3d 981, 986 (6th Cir. 1999). Instead, provisions that grant "authority to determine eligibility for benefits or to construe the terms of the plan," are recognized as conferring discretion and making appropriate the deferential standard

of review. Id. (quoting Firestone, 489 U.S. at 115). These are just the sort of provisions found at sections 12.2 and 12.5 of the plan in this case, and we therefore must apply the deferential arbitrary-and-capricious standard.

Belluardo and Middelton argue that the plan language does not give the administrative committee discretion to "construe the terms of the Plan." This argument simply contradicts the language of section 12.2. They also argue that the summary plan description does not say that the committee has discretion to construe the terms and therefore the summary plan description and the plan itself conflict. The summary plan does not contradict the idea that the committee has discretion to construe the plan; it simply does not address the issue. A summary plan description does not conflict with a plan merely because it does not include every provision of the plan. Sprague v. Gen. Motors Corp., 133 F.3d 388, 401 (6th Cir. 1998). "The reason is obvious: by definition, a summary will not include every detail of the thing it summarizes." Id. In sum, Belluardo and Middleton offer no persuasive argument that review of the administrative committee's denial of benefits should be de novo rather than deferential. We will review the committee's decision under the arbitrary-and-capricious standard of review.

B.

The plan stated that "Covered Employee" means "any Employee of the Company except any Employee . . . who is classified as a commissioned newspaper carrier under the Company's personnel policy." Belluardo and Middleton argue that this exception cannot be a basis for excluding them from coverage because the administrative record contains no written personnel policy. The committee interpreted the term "personnel policy" to include Dayton Newspapers' practices, rather than being limited to a written document. The committee wrote:

We believe there is a policy to exclude commissioned newspaper carriers from participation in the Plan. Your own lawsuit seeking class treatment is premised on the argument that there has been a consistent pattern and practice of excluding newspaper carriers who provide services under similar conditions from Plan participation. The evidence in the record shows that Dayton never has regarded its newspaper carriers as eligible for benefits. Indeed, we find that the consistent and longstanding use of written independent contractor agreements, including the agreement that you signed, constitutes evidence of such a policy. Accordingly, we believe the exclusion of "commissioned newspaper carriers" from Plan participation requires us to deny your claim.

Thus, the committee concluded that the parties' course of dealing showed that they regarded the plaintiffs as independent contractors rather than as employees of the newspaper. The question is whether the committee's interpretation of the term "personnel policy" to include practices and course of dealing was arbitrary and capricious, or in other words, irrational in light of the plan's provisions. See Spangler, 313 F.3d at 361.

Belluardo and Middleton rely on Maurer v. Joy Techs., Inc., 212 F.3d 907, 919 (6th Cir. 2000), for the proposition that the lack of a written document means that there could be no personnel policy. In Maurer, the court held that a collective bargaining agreement did not reserve rights as against retirees where an insurance booklet contained a reservation of rights, but stated that retiree benefits would be covered by a separate booklet, which in fact was never created. This case is beside the point for a number of reasons. First, it interprets a collective bargaining agreement and does not involve deferential review of a plan administrator's interpretation of an ERISA plan. Id. Second, the collective bargaining agreement expressly referred to a booklet, which has to be a writing. Third, whether the separate booklet was created or not was irrelevant to the point that the booklet that did exist said it did not apply to

retirees, and therefore the employer could not rely on a reservation of rights that was inapplicable.

Belluardo and Middleton also argue that the plan administrator, Cox Enterprises, labors under a conflict of interest because it funds the plan and also appoints the administrative committee, which makes the benefits decisions. We are indeed required to take this circumstance into account in determining whether the administrative committee's interpretation of the plan is arbitrary or capricious. See Calvert v. Firstar Fin., Inc., 409 F.3d 286, 293, 297 (6th Cir. 2005).

The committee's interpretation that Dayton Newspapers' personnel policy included its course of dealing with the carriers was not inconsistent with a common meaning of "policy," which is "a definite course or method of action selected . . . from among alternatives." Webster's Third New Internat'l Dictionary 1754 (1981). Even taking into account Cox Enterprises' conflicting interests as funder, plan administrator, and appointer of the administrative committee, the committee's explanation was not irrational. Therefore, its decision survives under the deferential standard of review we must apply.

## II.

Belluardo and Middleton's second claim is for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). The cause of action provided by § 1132(a)(3) is only available to beneficiaries who have no remedy under the other sections of § 1132. Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615 (6th Cir. 1998). Because Belluardo and Middleton brought a claim under § 1132(a)(1)(B) which was adjudicated on the merits, they have no cause of action for the same injury under § 1132(a)(3). Id. ; accord Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 454 (6th Cir. 2003). Belluardo and Middleton contend that they have alleged a "larger systematic breach of fiduciary obligations," see Mass. Mut. Life Ins. Co. v. Russell,

473 U.S. 134, 147 (1985), but the wrong alleged in each claim is exactly the same–denial of benefits under the pension plan–as is shown by the fact that Count II incorporates Count I and then simply adds that the classification decision was a breach of fiduciary duty. Accordingly, we affirm the district court's dismissal of Count II.

III.

Belluardo and Middleton also allege a count for unjust enrichment for failure to pay the employer's portion of Social Security and Medicare taxes and to make contributions to the Ohio workers' compensation and unemployment insurance funds. The defendants contend that this count is barred by res judicata because the plaintiffs litigated the claim in the Ohio state courts and judgment was entered against them and affirmed by McElwee v. Dayton Newspapers, Inc., No. 19813, 2004 WL 67965 (Ohio Ct. App. Jan. 16, 2004). Belluardo and Middleton do not dispute that the claim is the same as that litigated in the Ohio action, but only contend that the defendants cannot raise the defense of res judicata because they failed to allege it as an affirmative defense in their answer. When the defendants filed their answer on October 14, 2003, the Ohio litigation was still ongoing. The Ohio case was decided by the Ohio Court of Appeals on January 16, 2004. On January 30, 2004, defendants raised the res judicata defense in the briefing on their motion to dismiss.

"Failure to raise an affirmative defense by responsive pleading does not always result in waiver." Smith v. Sushka, 117 F.3d 965, 969 (6th Cir. 1997); accord Gilbert v. Ferry, 413 F.3d 578, 579-80 (6th Cir. 2005) (per curiam); Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1445 (6th Cir. 1993). The purpose of Fed. R. Civ. P. 8(c) is to give the opposing party timely notice of the affirmative defense and the opportunity to respond. Smith, 117 F.3d at 969. The defendants raised their defense as soon as the defense became available. It is inconsequential that they raised it in briefing a dispositive motion instead of in an amended pleading. Belluardo and Middleton have had notice of the defense. No legitimate purpose would be served by

requiring a remand to the district court for the defendants to amend their answer to add a defense that has already been briefed.

Accordingly, we affirm the district court's dismissal of Count III.

IV.

Belluardo and Middleton also appeal the district court's denial of their motion for discovery of communications between Cox Enterprises, as plan administrator, and its counsel. All the communications at issue occurred after Belluardo and Middleton had filed this suit. The district court held that once suit had been filed, any communications thereafter occurring between the plan administrator and its counsel were protected by the attorney-client privilege. Belluardo v. Cox Enters. Pension Plan, No. C-3-01-041 (S.D. Ohio Nov. 10, 2003) (citing Lewis v. UNUM Corp. Severance Plan, 203 F.R.D. 615, 619 (D. Kan. 2001)).

We review the district court's discovery decision for abuse of discretion. See Scales v. J.C. Bradford & Co., 925 F.2d 901, 906 (6th Cir. 1991). Belluardo and Middleton's argument that they are entitled to share in communications between the plan administrator and its counsel is predicated on their contention that they are beneficiaries of the plan. We have affirmed the district court's holding that they are not beneficiaries of the plan, and therefore their argument fails. We see no abuse of discretion.

The judgment of the district court is affirmed.